

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEYBANK, N.A., a national banking
association,

                Plaintiff,

     v.

BINGO, Coast Guard Official No.
1131913, in rem, et al.,

             Defendants.

CASE NO. C09-849RSM

ORDER ON MOTION TO ENFORCE
SETTLEMENT AGREEMENT

       This matter is before the Court for a ruling on plaintiff's motion to enforce a settlement agreement, together with defendants' motion for partial summary judgment of dismissal of the settlement agreement claim.  Dkt. ## 33, 39.  The Court earlier determined that an evidentiary hearing was required to resolve the matter.  Dkt. # 64.  The evidentiary hearing was held over two days, September 7 and 8, 2010, and a briefing schedule was established for the parties to present closing argument and their proposed Findings of Fact and Conclusions of Law.  The briefing scheduled was extended by agreement of the parties.  Dkt. # 128.  The matter is now fully briefed and ready for a decision.

1                          FACTUAL BACKGROUND

2          The parties and the Court are thoroughly familiar with the facts underlying the dispute

3   regarding the enforceability of a settlement agreement.  As this is a motion hearing, not a trial,

4   the Court deems it unnecessary to formally set forth Findings of Fact and Conclusions of Law,

5   and instead will focus on the narrow issues which are dispositive of the question at hand.

6   Fed.R.Civ.Proc. 52(a)(3).

7          Briefly stated, Keybank contends that an enforceable settlement agreement was reached

8   by e-mails circulated among counsel on Friday, July 24, 2009, or thereafter by conduct of the

9   defendants ("the Binghams").  The terms of that settlement agreement were outlined in a

10  document captioned "Binding Settlement Agreement Term Sheet" ("Term Sheet").  Evidentiary

11  Hearing ("EH") Exhibit 24.  This document was not signed by plaintiff, by defendants, or

12  counsel for any party, and by its own language only represents an outline of "basic terms to be

13  incorporated into a definitive settlement agreement."  *Id*.  Nevertheless, plaintiff has asked the

14  Court to find that this document constitutes an enforceable settlement agreement between the

15  parties to this lawsuit.

16         The Court held the evidentiary hearing because it found there was a factual dispute

17  regarding whether defendants had accepted the terms of the agreement.  At the time of the

18  settlement discussion, counsel representing the parties in this action were Bruce Leaverton  and

19  Malcolm Lindquist for plaintiff Keybank;  Spencer Hall for the Bingham family members and

20  Bingo entities, and Thomas Bucknell for Frances Graham.  When it became apparent that these

21  attorneys would be witnesses in this case, each of them withdrew and new counsel appeared on

22  behalf of the parties.

23

24

The exhibits and testimony presented at the evidentiary hearing began with a series of e-mail proposals and discussions circulated among the parties and their respective counsel on July 21 and 22, 2009, along with the Term Sheet.  EH Exhibits 1-5, 6-10.  On July 23, 2009 Henry Dean, a business associate of the Binghams, e-mailed Mr. Leaverton stating, "On behalf of the Binghams I accepted the settlement offered by your client and by this email I am confirming our discussion and agreement.. . ."  EH Exhibit 10.  However, it is indisputable that Mr. Dean was not counsel of record for defendants and could not speak for them, nor accept the settlement on their behalf.  The same communication expressed the hope that the boat *Bingo,* which has been held under arrest in this case, could be released the following day if the Binghams could make the initial payment due at closing of $1,187,500.  *Id.*  Mr. Leaverton responded to this, "Henry, Tom, and Spencer---KeyBank will not agree to release the vessel in the absence of its receipt of both the required cash and fully executed final document incorporating the terms of the proposed binding term sheet, which is attached."  Exhibit 12.   He continued,

> We will commence our efforts as soon as we receive the binding acceptance of the attached term sheet from the Bingo parties, as defined therein.  This acceptance may take the form of an email from each of you accepting the attached term sheet on behalf of your clients (please identify who they are) and confirming that your clients have had an opportunity to confer with you as their legal counsel and have authorized you to accept these terms on their behalf.

*Id.* Mr. Leaverton then asked that Mr. Hall and Mr. Dean "please forward your response on behalf of your clients as soon as possible."  EH Exhibit 14.

On Friday, July 24, at 12:07 pm, Mr. Leaverton wrote to Mr. Hall, Mr. Bucknell, and Mr. Dean, stating

> Spencer---My understanding is Henry Dean is a consultant to Bingo and the Bingham family members but is not their legal counsel.  **Please advise by return email if you are authorized and do accept the terms of the attached term sheet as counsel for all the Bingo Parties** (as defined in the term sheet)---with the exception of Frances Graham, who Tom Bucknell represents and who has already accepted the term sheet

on her behalf.  With that acceptance, Key will consider agreement to have been reached
and will commence work on the final documentation.  Thank you.

EH Exhibit 19 (emphasis added.)  Several minutes later, at 12:14 pm, Mr. Leaverton wrote

separately to Mr. Dean (with copies to Mr. Bucknell, Mr. Hall, and Mr. Lindquist), saying,

"Henry---please give Malcolm a call as I will be out of pocket until Sunday afternoon."  EH

Exhibit 18.

At 2:10 pm on that day, Mr. Hall responded to Mr. Leaverton,

Bruce,

I could not reach you by telepone [sic].

All my clients, either directly or through their spouse, have instructed me to accept
the settlement.  I am providing you with that information solely for informational
purposes.  Neither I nor my firm accepts any responsibility to Key Bank with respect
to binding our clients.

EH Exhibit 19.  Mr. Leaverton, who at this time was on his way to a running race as a member

of a relay team, responded at 2:22 pm, stating, "Actually, as disclosed agents none of us lawyers

have liability regarding the agreement."  EH Exhibit 53.  At 2:30 pm Mr. Hall responded to Mr.

Leaverton,

Bruce,

I talked to Malcolm.  I am unwilling as a matter of practice to act as an agent for
binding my clients to a settlement.  I suggest that we get the documents done and
have the clients execute them.

Good luck in your relay.

Spencer

EH Exhibit 54.

ORDER ON MOTION TO ENFORCE SETTLEMENT AGREEMENT - 4

1    Shortly after this,[1] Mr. Dean sent an e-mail to Mr. Lindquist, confirming a telephone

2    conversation:

3    > As we discussed a moment ago you will place signature blocks on the term sheet for
     > David, Chris, Scott Bingham, spouses and related entities (not Fran as Tom Bucknell
4    > has already approved on her behalf) and send it to me for execution.  I have called
     > Spencer to make certain he has no problem as he is the attorney, not me.
5
     > My phone number is . . . . Please call me for any assistance no matter what it is so that
6    > we can have this all wrapped up Monday.

7    > Henry

8    EH Exhibit 20.  Mr. Lindquist e-mailed the Term Sheet with signature blocks back to Mr. Dean

9    at 4:02 pm that day, and asked that the executed document be e-mailed to both him and to Mr.

10   Leaverton.  EH Exhibit 21.  The document was never signed.

11       Mr. Leaverton and Mr. Hall both testified at the evidentiary hearing.  Mr. Leaverton

12   testified that he understood the language that "All my clients, either directly or through their

13   spouse, have instructed me to accept the settlement" to be a binding acceptance of the Term

14   Sheet by Mr. Hall, as counsel, on behalf of all parties whom he represented.  Mr. Hall, on the

15   other hand, testified that he never accepted or confirmed settlements on behalf of his clients, and

16   he did not do so on this occasion.  "I never confirm settlements on behalf of my clients, as a

17   matter of practice.  I just don't do it.  I don't put myself in the middle."  Evidentiary Hearing

18   ("EH") Transcript, September 8, 2010, p. 11.   He explained that "[t]here is a difference between

19   giving me the authority and me using that authority."  *Id*., p. 24.  Finally, he explained that his

20   response to Mr. Leaverton at 2:30 pm was not related to liability, but simply to his policy.

21       Q.  And you indicated to Mr. Lindquist it was the policy of your firm not to assume

22   _____

23       [1] The email was sent at 3:38 pm on Friday, July 24, but it was suggested at the
     evidentiary hearing that this time stamp was Mountain Time, as Mr. Dean spent a considerable
24   amount of time in Sun Valley, Idaho, as his email address indicates.

ORDER ON MOTION TO ENFORCE SETTLEMENT AGREEMENT - 5

1    any liability in connection with your clients' acceptance of settlement agreements,
     didn't you?

2

3    A.  No.  You keep putting the word "liability" in there.  I never talked about liability.
     That was not what I said.  I said it is our policy never to act as an agent to bind our
     clients to settlement.

4

     *Id.*, p. 38.

5

6    After hearing Mr. Hall's testimony, the Court stated,

7    I am absolutely convinced that what Mr. Hall has indicated here on the stand is
     absolutely right, he doesn't bind his clients.  Therefore, he never accepted the deal,
     Mr. Hall.  And no matter how much the Binghams wanted to accept the deal, it

8    never got done.

9    *Id.*, p. 96-97. Counsel for plaintiff then argued that

10   All the court can consider here are the objective manifestations, what that e-mail
     communicates.  What Mr. Hall thought he was communicating, what his intentions

11   were, are irrelevant.  We just look at the plain words of the email.

12   *Id.* at 97.

13   The Court agreed "100 percent."  *Id.*

14   Like I said, if the e-mail stopped after the first sentence, like Mr. Bucknell's e-mail,
     you would be right, and the Binghams would lose.  But I think at this particular point

15   in time, what you have managed to prove, and what the court is satisfied has in fact
     been proven here, is that Mr. Hall, contrary to his clients' wishes, did not accept a

16   settlement on their behalf.  He is informing Mr. Leaverton that his clients are willing
     to accept it.  But he is saying, with the caveat, "That is for informational purposes."

17

18   He follows if up with your [Exhibit] 54, "Bruce, I talked to Malcolm.  I am unwilling
     as a matter of practice to act as an agent for binding my clients to a settlement.
     I suggest we get the documents done, have the clients execute them."  He never

19   accepted.

20   And you have to prove, unless you can show me case law to the contrary, that he, the
     attorney accepted.  Mr. Dean couldn't do it.  The Binghams couldn't do it on their

21   own.  They couldn't call up Mr. Leaverton and say, we accept, unless they were
     willing to sign the documents.

22

     *Id.*, p. 98.

23

24

ORDER ON MOTION TO ENFORCE SETTLEMENT AGREEMENT - 6

1    The hearing was adjourned with the expectation that the parties would submit

2    supplemental briefing, and then the Court would determine whether to hold final argument. After

3    review of the supplemental memoranda, the Court deems it unnecessary to hear final argument.[2]

4

5                                              DISCUSSION

6        As the Court stated previously in the Order setting the evidentiary hearing, this Court has

7    inherent authority to enforce a settlement agreement in an action pending before it. *See In re City*

8    *Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir.1994); *Callie v. Near*, 829 F.2d 888, 890 (9th

9    Cir.1987); *TNT Marketing, Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir.1986). To be enforceable,

10   a settlement agreement must meet two requirements.  First, it must be a complete agreement.[3]

11   *See Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir.1994); *Callie*, 829 F.2d at 890

12   (citing *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir.1983)) Second, both parties must have

13   either agreed to the terms of the settlement or authorized their respective counsel to settle the

14   dispute. *See Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir.1977).  A party's

15   attorney may bind his or her client to a settlement agreement if he or she has the express

16   permission of the client. *Id.* at 1145.

17       Settlement agreements are contracts, which a federal court interprets by looking to the

18   contract law of the state in which it sits.  *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir.1990).

19   Under Washington law, as set forth by statute,

20

21   _____

22   [2] Also pending at this time is a request for oral argument on plaintiff's motion to dismiss
     counterclaims, Dkt. # 130.  The Court will hear oral argument on this motion.  The Courtroom
     Deputy will contact counsel to set a date for this argument.

23   [3] The Court notes that this completeness requirement has never been argued or
     determined with respect to the Term Sheet; the entire focus of plaintiff's motion and subsequent

24   briefing has been on the acceptance aspect.

An attorney and counselor has authority:

(1) To bind his client in any of the proceedings in an action or special proceeding by his agreement duly made, or entered upon the minutes of the court; but the court shall disregard all agreements and stipulations in relation to the conduct of, or any of the proceedings in, an action or special proceeding unless such agreement or stipulation be made in open court, or in presence of the clerk, and entered in the minutes by him, or signed by the party against whom the same is alleged, or his attorney; . . .

RCW 2.44.010.   It is undisputed that the Term Sheet itself was never signed by counsel or by the defendants.  Although prior to the evidentiary hearing plaintiff argued that this state law provision does not apply in this proceeding, the position taken in the supplemental memoranda is that the statute does not come into play, either because Mr. Hall did bind his clients to the settlement with a writing, or because the Binghams accepted the settlement terms directly.  These arguments will be addressed separately.

I.  Acceptance of the Settlement Agreement by Counsel

As shown above, the Court found at the conclusion of the evidentiary hearing that Mr. Hall did not accept the settlement agreement on behalf of his clients.  He was authorized by them to do so, but he did not exercise that authority.  The Court then gave plaintiff the opportunity to come forward with case law or argument to demonstrate that this is an incorrect conclusion.

To that end, plaintiff has set forth the well-known legal principles of contract formation and acceptance, including the rule that in determining whether there has been an offer and acceptance sufficient to form a contract, "the unexpressed, subjective intentions of the parties are irrelevant; the mutual assent of the parties must be gleaned from their outward manifestation." Plaintiff's Supplemental Brief, Dkt. # 140, p. 3, *quoting Weiss v. Lonnquist*, 153 Wn. App. 502, 511, 224 P. 2d 787 (2009).  This statement of the law omits reference to the "context rule" announced in *Berg v. Hudesman*, 115 Wash.2d 657 1990), later clarified by the Washington

1   Supreme court in *Hearst Communications, Inc. v. Seattle Times Co.*, 154 Wash.2d 493, 500, 115

2   P.3d 262 (2005).  Under this rule, "extrinsic evidence is relevant only to determine the meaning

3   of specific words and terms used, not to show an intention independent of the instrument or to

4   vary, contradict, or modify the written word." *Oliver v. Flow Int'l Corp.*, 137 Wash.App. 655,

5   660, 155 P.3d 140 (2006) (*citing Hearst*, 154 Wash.2d at 503, 115 P.3d 262).

6           Plaintiff argues that "[t]he outward manifestation of acceptance occurs when the

7   acceptance is 'actually or constructively communicated' to the offeror."  Plaintiff's Supplemental

8   Memorandum, Dkt. 140, p. 3, *citing Koepke Sayles & Co. v. Lustig,* 155 Wn. 70 (1929).

9   Acceptance is "any 'expression communicated by word, sign, or writing to the person making

10  the offer of the intention to be bound by the offer's terms.'"  *Id.*, *quoting Veith v. Xterra Wetsuits

11  LLC*, 144 Wash. App. 362, 366 (2008).   According to plaintiff, Mr. Hall's 2:10 pm e-mail

12  constituted a communication of his clients' acceptance of the Term Sheet, and thus was a binding

13  acceptance of the settlement.  However, this argument relies on a selective reading of the e-mail,

14  and ignores the fact that the e-mail met only one of the three requirements for acceptance set

15  forth in Mr. Leaverton's July 23, 2009 e-mail.  EH Exhibit 12.  All that Mr. Hall communicated

16  in his e-mail was that his clients had instructed him to accept the settlement; nowhere did he

17  confirm that he had an opportunity to confer with his clients, or communicate actual acceptance

18  of the Term Sheet as requested.   Indeed, he indicated otherwise, by saying that this was "for

19  informational purposes" only.   The "outward manifestation" of acceptance must include the

20  entire e-mail, as well as the following one sent twenty minutes later explaining that he was

21  unwilling as a matter of policy to bind his clients. When read in their entirety, whether together

22  or separately, these e-mails cannot be found to constitute acceptance.

23

24

1    Plaintiff contends that the "informational purposes" language was neither a counteroffer

2    nor a rejection, so it therefore must be an acceptance. "That is what Mr. Leaverton understood

3    Mr. Hall to be saying." Plaintiff's Supplemental Brief, Dkt. # 140, p. 7. However, if Mr. Hall's

4    intent or understanding is not relevant to the objective manifestation of acceptance, then neither

5    is Mr. Leaverton's. On the other hand, under the context rule, the Court may consider both Mr.

6    Hall's and Mr. Leaverton's testimony to resolve a dispute about the meaning of a specific word

7    or term. "In cases of misunderstanding, there must be inquiry into the meaning attached to the

8    words by each party and into what each knew or had reason to know." *Berg v. Hudesman*, 115

9    Wash.2d 657, 801 P.2d 222, 229 (1990) (*quoting* Comment b to the *Restatement of Contracts*

10   *(Second)*, §214(c)). Thus, to whatever extent the term "informational purposes" was ambiguous

11   or capable of various interpretations, the Court may consider extrinsic evidence to determine the

12   meaning.

13       Testimony at the evidentiary hearing by both witnesses indicates that things were moving

14   very fast on that Friday afternoon. Mr. Dean believed he had crafted an agreement with plaintiff,

15   but he did not have the authority to accept it on the Binghams' behalf. Mr. Hall, whose policy

16   was to not accept settlements on behalf of his clients, believed the agreement set forth in the

17   Term Sheet was incomplete, and wanted to consult with his clients before advising them to sign

18   it. He also testified that, as an experienced attorney, he was uncomfortable doing business of this

19   magnitude by e-mails. He tried to call Mr. Leaverton, but did not reach him. Mr. Leaverton had

20   already advised Mr. Dean that he was "out of pocket" for the rest of the afternoon, traveling to

21   his relay race. He was reading and answering e-mails on his mobile device. On that device, he

22   received Mr. Hall's e-mail stating that he was "unwilling as a matter of practice to act as an

23

24

ORDER ON MOTION TO ENFORCE SETTLEMENT AGREEMENT - 10

1 | agent for binding my clients to a settlement."  That statement should have resolved any

2 | misunderstanding in Mr. Leaverton's mind about acceptance.

3 |        Whether the Court looks only at the outward manifestation of acceptance, including the

4 | e-mails and attempted phone call, or considers the witnesses' testimony for context, the result is

5 | the same:  Mr. Hall did not accept the Term Sheet settlement on behalf of his clients on that

6 | Friday afternoon, or any time thereafter.  The Court finds no basis in plaintiff's arguments to

7 | modify the findings made at the evidentiary hearing.

8 |        II.  <u>Acceptance by Conduct of David Bingham</u>

9 |        Plaintiff next argues that the settlement was accepted by David Bingham, through direct

10 | communications with KeyBank executives, and other actions.  Plaintiff argues that a party can

11 | "directly communicate its mutual assent and form a binding settlement agreement, even though

12 | he or she is represented by counsel."  Plaintiff's supplemental Brief, Dkt. # 140, p. 9;  *citing In re*

13 | *Patterson*, 93 Wash. App. 579, 585 (1999).   However, plaintiff has neglected to quote the

14 | complete ruling in *Patterson*.  The appellate court, in addressing the requirements of Washington

15 | Court Rule 2A, stated,

16 |      A party may settle a case with or without an attorney. When the party undertakes a
17 | settlement directly with the other party, reduces it to writing, and signs it, as in this
   | case, the requirements of CR 2A are met just as if the attorney had participated.

18 | *In re Patterson*, 93 Wash. App. at 585.   Here, there was no writing signed by the Binghams, so

19 | *Patterson* does not apply.

20 |        Plaintiff seeks to escape the requirements of RCW 2.44.010 by citing to *In re Marriage*

21 | *of Ferree*, in which the court found that the statutory requirements for a signed writing did not

22 | apply to an agreement reached between the parties themselves.  Specifically, the court stated,

23 |      By both its terms and its context, [the statute] applies to agreements made by attorneys,
   | but not to agreements made by the clients themselves.

24 |

> Here, the declarations of Ms. Ferree, Spiegel and Miller establish without controversion that the agreement of February 28 was made by the parties themselves, albeit in the presence of their attorneys. Thus, RCW 2.44.010(1) does not apply.

*In re Marriage of Ferree*, 71 Wash. App. 35, 46 (1993).   The settlement agreement which the court found enforceable in *Ferree* was reached between the parties following a judicial settlement conference, and in the presence of the parties' attorneys.   Both attorneys presented affidavits or declarations affirming that the settlement had been reached between the parties themselves.   That is clearly distinguishable from the situation here.

Plaintiff seeks to offer proof, in the form of deposition testimony by Daniel Willets, a KeyBank executive, that David Bingham reached a settlement directly with plaintiff. Plaintiff's Proposed Findings of Fact, Offer of Proof, and Conclusions of Law, Dkt. # 133, Exhibit B.   The Court has reviewed the deposition excerpt and finds it wholly insufficient to constitute proof of acceptance of a settlement by defendants.   Among many other deficiencies, there is no reference to a specific settlement or to any terms thereof.   Mr. Willets' testimony simply serves to confirm the impression, as indicated by Mr. Dean above, that David Bingham was anxious to expedite and finalize the proposed settlement so that he and his family could use the boat *Bingo* for a planned vacation.   His expression of gratitude to a KeyBank executive cannot constitute acceptance of the Term Sheet settlement.

Similarly, other conduct by Mr. Bingham, such as authorizing the release of funds from a trust, or contacting KeyBank to arrange to board and provision the vessel *Bingo* cannot serve to constitute acceptance by him or by all the defendants of the proposed settlement.   As demonstrated above, plaintiff's argument, based on *Marriage of Ferree*, that RCW 2.44.010 does not apply to direct settlements between clients is unavailing.   Further, the "acceptance by conduct" rule set forth in *DeBritz v. Sylvia*, 21 Wn. 2d 317 (1944), upon which plaintiff relies, is

1    inapplicable here.  In the *DeBritz* case, the defendant took possession of the premises in question

2    under a written option contract, signed by plaintiff only, which contract set out the terms of the

3    sale and the price. After plaintiff signed the option it was delivered to the defendant, who then

4    took possession within the time specified.  The court found that the written agreement, although

5    unilateral in nature and unsigned by the defendant, became binding on the parties when

6    defendant took possession.  He thereby elected to exercise his rights under the written option,

7    and performed accordingly.  *DeBritz v. Sylvia*, 21 Wn. 2d 317 (1944).

8           Here, by contrast, there was no option on the table that could be exercised simply by

9    conduct.  Instead, there was a Term Sheet outlining a series of steps to be performed by the

10   numerous parties. Mr. Leaverton explicitly set forth the manner of acceptance in his July 23,

11   2009 e-mail to Mr. Dean, Mr. Hall, and Mr. Bucknell:  "an email from each of you accepting the

12   attached term sheet on behalf of your clients. . . "  EH Exhibit 12.  After that was received,

13   plaintiff would prepare final documents, but would not release the vessel until it received both

14   the cash payment and "fully executed final documents."  *Id.*  Mr. Bingham's actions taken in

15   anticipation of closing the deal cannot be said to be acceptance of the terms of the offer, either on

16   his own behalf and certainly not on behalf of the other family members and "Bingo entities."

17                                          CONCLUSION

18          Plaintiff has failed to meet the burden of demonstrating that an enforceable settlement

19   agreement was reached by the parties on July 24, 2009, or any time thereafter.  Mr. Hall never

20   accepted the Term Sheet proposal on behalf of his clients, and the clients never themselves

21   signed the document.  Mr. Bingham's unilateral conduct cannot serve to demonstrate acceptance

22   of the Term Sheet on behalf of the defendants.

23

24

1        Accordingly, plaintiff's motion to enforce the settlement agreement (Dkt. # 33) is

2 DENIED.  Defendants' motion for partial summary judgment of dismissal of the claim of an

3 enforceable settlement (Dkt. # 39) is GRANTED.  The parties shall submit, within three weeks

4 of the date of this Order, a revised Joint Status Report reflecting the current posture of the case

5 and consistent with the earlier Order Regarding Initial Disclosures and Directing Joint Status

6 Report, Dkt. # 30.

7        Dated this 1 day of March 2011.

8

9

10                       RICARDO S. MARTINEZ
                       UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON MOTION TO ENFORCE SETTLEMENT AGREEMENT - 14