1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9
AT SEATTLE

10  | KEYBANK, N.A., a national banking
association,                                          CASE NO. C09-849RSM

11
ORDER ON MOTION TO DISMISS
Plaintiff,                          COUNTERCLAIMS

12
v.
13

14  | BINGO, Coast Guard Official No.
1121913,

15
Defendants.

16

17        This matter is before the Court for consideration of plaintiff KeyBank's motion to

18  dismiss defendants' counterclaims.  Dkt. # 130.  The Court heard oral argument on this matter on

19  March 31, 2011, and has fully considered the parties' memoranda, and the exhibits and

20  arguments presented at the hearing.  The motion shall be granted in part, and denied in part, as

21  set forth below.

22                                  FACTUAL BACKGROUND

23        The facts giving rise to this action, and to defendants' counterclaims, are fairly simple.

24  The defendants in this matter are the vessel *Bingo*, a pleasure craft, *in rem*; together with

1  individual defendants Francis Graham and her children and grandchildren David and Sharon

2  Bingham, Kelly and Scott Bingham, and Christopher and Cherish Bingham (together, "the

3  Binghams"); Bingo Investments, LLC, a Washington limited liability company (Bingo

4  Investments"); Bingo Properties, LLC, a Washington limited liability company; and Carnutz,

5  Inc., a Washington corporation.  In 2002, David and Sharon Bingham borrowed $1.5 million

6  from plaintiff KeyBank for the purchase of the vessel *Bingo*, giving KeyBank a security interest

7  in the vessel in a document designated a " Consumer Security Agreement."  In 2005, Bingo

8  Investments, LLC, borrowed over $100 million from KeyBank, securing the loans with assets

9  owned by Frances Graham pledged as collateral.  Mrs. Graham and her daughter Sharon

10  Bingham each signed a Commercial Pledge Agreement ("Pledge Agreement"); these were

11  restated in 2007.  Mrs. Graham and Sharon Bingham also signed "Investment Services

12  Agreements" ("ISA's"), dated about a week before the date on the first Pledge Agreements.[1]

13        The Binghams, as owners of Bingo Investments, used the borrowed money to make

14  speculative real estate investments with Centurion Financial Group.  These investments failed,

15  the Binghams defaulted on the loans, and KeyBank exercised the powers given it in the Pledge

16  Agreements to sell the pledged collateral and pay down the loans.  The amount realized from

17  sale of the collateral failed  to cover the amount of the loans.  The shortfall of $13 or $14 million

18  was the original subject of this lawsuit, which was initiated by KeyBank by moving to arrest the

19  vessel *Bingo*.

20        In their amended answer to the amended complaint, defendants asserted counterclaims

21  for breach of fiduciary duty, breach of contract, securities-related liability, release of the vessel

22

23        [1] The ISA's refer to an "attached schedule of property" but the schedule is not attached,

24  so it is not clear what property these ISA's covered.

ORDER ON MOTION TO DISMISS COUNTERCLAIMS - 2

1   *Bingo*, Washington Consumer Protection Act violations, and a declaratory judgment that, among

2   other wrongs, KeyBank's management of the Binghams assets did not meet minimum standards

3   of care and suitability, and that by failing to properly liquidate the assets KeyBank is liable to

4   defendants for a minimum of $31 million.  Dkt. # 123.  Defendants further assert in the

5   counterclaims that allocation of the proceeds of the liquidation was arbitrary, and KeyBank

6   should have applied it to pay off the vessel *Bingo*, and further that KeyBank should be liable to

7   defendants for their investment losses.  Defendants seek in their counterclaims direct and

8   consequential damages of $231,000,000.  *Id.,* ¶ 10.30.   KeyBank has moved to dismiss all

9   counterclaims for failure to state a claim, pursuant to Fed.R.Civ.Proc. 12(b)(6).

10                                       DISCUSSION

11       **I.  Legal Standard**

12       A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.

13   Such dismissal is proper only where there is either a " lack of a cognizable legal theory " or " the

14   absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police*

15   *Department*, 901 F. 2d 696, 699 (9th Cir. 1988).   The issue on a motion to dismiss for failure to

16   state a claim is not whether the claimant will ultimately prevail, but whether the claimant is

17   entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Development Corp*.,

18   108 F. 3d 246, 249 (9th Cir. 1997).   When evaluating a Rule 12(b)(6) motion, the Court must

19   accept all material allegations in the complaint as true and construe them in the light most

20   favorable to the non-moving party.  *Barron v. Reich*, 13 F. 3d 1370, 1374 (9th Cir. 1994).   The

21   Court is not required, however, to accept "conclusory legal allegations cast in the form of factual

22   allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v.*

23   *Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

24

1

2        Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires " a short and

3   plain statement of the claim showing that the pleader is entitled to relief. "  5A Charles A. Wright

4   & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990).  The notice pleading

5   standard set forth in Rule 8 establishes "a powerful presumption against rejecting pleadings for

6   failure to state a claim." *Gilligan*, 108 F. 3d at 248 (citations omitted).  Therefore, a Court must

7   not dismiss a complaint with prejudice unless "it appears beyond doubt that the plaintiff can

8   prove no set of facts in support of his claim which would entitle him to relief." *Conley v.*

9   *Gibson*, 355 U.S. 41, 45-48 (1957);   *U.S. v. City of Redwood City*, 640 F. 2d 963, 966 (9th Cir.

10  1981).

11  **II.  Analysis**

12       A.  <u>Washington Consumer Protection Act Claim</u>

13       Defendants assert as one of their counterclaims that KeyBank's actions violated the

14  Washington Consumer Protection Act ("CPA"), RCW 19.86 *et seq*.  The Court addresses this

15  counterclaim first as it is so clearly without merit and may be summarily dismissed.  It is well-

16  established under Washington law that a CPA violation must include the following elements:

17  (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting the

18  public interest; (4) that injures the plaintiff in his or her business or property; and (5) a causal

19  link between the unfair or deceptive act and the injury suffered.  *Hangman Ridge Training*

20  *Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778 (1986).   The "unfair or deceptive act or

21  practice" must have the capacity to deceive a substantial portion of the public.  *Henery v.*

22  *Robinson*, 67 Wash. App. 277, 289-91 (1992).

23

24

1    Defendants can state no facts that would demonstrate that the acts of KeyBank had the

2  capacity to deceive a substantial portion of the public.  Under established precedent in this Court,

3  the "tribulations of multimillionaires" cannot serve as the basis for a CPA claim.  *Swartz v.*

4  *KPMG, LLC*, 401 F. Supp 2d 1146, 1154 (W.D.Wash. 2004) (Cause No. 03-cv-1252MJP).   In

5  dismissing a CPA claim with prejudice in that case, the Court noted that an act affecting multi-

6  millionaires did not have the capacity to deceive a "substantial portion" of the public.

7        The number of consumers who could conceivably find themselves in plaintiff's
         circumstances – looking for a tax savings on millions of dollars of capital gains –
8        is extremely small and unable to qualify as "a substantial portion of the public"
         under any reasonable definition of that term. As a matter of law, conduct directed
9        toward a small group cannot support a CPA claim.

10  *Id*. at 291 (citing  *Henery v. Robinson*, 67 Wash. App. at 277, and *Micro Enhancement Int'l, Inc.,*

11  *v. Coopers & Lybrand LLP*, 110 Wash.App. 412, 438-439 (2002).  Nor could the act affect the

12  public interest:

13        For reasons similar to those stated above, plaintiff cannot establish that his dilemma is
         one which affects the public interest. The tribulations of multimillionaires are not the
14        focus of the legislative intent behind the CPA; as a (very small) group, the extremely
         wealthy are neither unsophisticated nor easily subject to chicanery.

15  *Id*., *citing Goodyear Tire & Rubber Co. v. Whiteman Tire Inc*., 86 Wash.App. 737 (1997).

16  Dismissal of the CPA claim with prejudice was affirmed on appeal.  *Swartz v. KPMG LLP*,  476

17  F. 3d 756, 761 (9th Cir. 2007).

18       The same analysis applies here.  Defendants cannot demonstrate that KeyBank's actions

19  had the capacity to deceive "a substantial portion" of the general public, or that they affected the

20  public interest.  Their CPA claim shall accordingly be dismissed with prejudice.

21       B.  Breach of Fiduciary Duty

22       Defendants assert in this counterclaim that KeyBank " breached its fiduciary duties. . . to

23  Defendants in regard to the custody and management of the Defendants assets, and application

24

1    thereof to claimed debts to KeyBank." Answer and Counterclaims, Dkt. # 123 ¶ 10.30.  They

2    claim direct damages of "at least $32,000,000.00, and consequential damages of approximately

3    $200,000,000.00 or more. "  *Id*.  In responding to the motion to dismiss, defendants explain their

4    theory that KeyBank breached a fiduciary duty by failing to act to protect the value of the

5    collateral when the markets declined dramatically in 2008, then selling the assets at their

6    depreciated value for less than the amount due on the loans. This counterclaim is based in part

7    upon a "75% loan-to-value" clause in the Pledge Agreement.   Defendants assert that "Key

8    breached these duties when it permitted Mrs. Graham's assets to fall below the 75% ratio

9    requirement of the loan documents and failed to steward suitable investments of the assets over

10   which it had discretionary investment control."  Defendants' Response, Dkt. # 142, p. 20.

11        In moving to dismiss this counterclaim, KeyBank has pointed to several fatal flaws, the

12   most notable of which is the fact that the 75% loan-to-value requirement in the Pledge

13   Agreements was an obligation imposed upon the "Grantor," namely Mrs. Graham, not

14   KeyBank.   Moreover, under Washington law, "a lender is not a fiduciary of its borrower; a

15   special relationship must develop between a lender and a borrower before a fiduciary duty

16   exists." *Miller v. U.S. Bank of Washington, N.A.*, 72 Wash. App. 416, 426-27 (1994).   To

17   proceed on their counterclaim, defendants must plead facts that show such a special relationship.

18        Defendants contend that such a "special relationship" was inherent in KeyBank's dual

19   role as lender and as manager of Mrs. Graham's portfolio, which was pledged as collateral.

20   However, the relevant documents---the Pledge Agreements and ISA's, together with the asset

21   management contract which was produced at the hearing---appear to refute any claim of a

22   "special relationship" between defendants and KeyBank.   Moreover, to the extent that such a

23

24

1    relationship may have been implicit in KeyBank's dual role, it would only extend to Mrs.

2    Graham and Sharon Bingham, who signed the relevant documents.

3            Defendants' counterclaim for breach of fiduciary duty relies so heavily on the untenable

4    assertions described above that it must be dismissed for failure to state a claim.  Defendants

5    shall, however, be given leave to amend this counterclaim.

6            C.  Breach of Contract

7            In their breach of contract counterclaim, defendants contend that KeyBank "breached its

8    contract for discretionary management of funds of the Defendants, and particularly Francis

9    Graham. . . "Amended Answer and Counterclaims, Dkt. # 123, ¶ 10.31.  Defendants do not

10   identify in this counterclaim any specific contract or the relevant terms.  However, in the factual

11   recitation preceding their counterclaims, their "failed discretionary management" allegation is

12   clearly tied to the 75% loan-to-value provision in the Pledge Agreements:

13           For an outstanding loan balance of $93,000,000.00, an asset value in the portfolio of
             $124,000,000.00 was required.  A liquidation of the portfolio at that asset value
14           would have left the Defendants with liquid assets of $31,000,000.00 rather than the
             alleged deficit of approximately $13,000,000.00, claimed by Key Bank, after its failed
15           discretionary management of the Defendants [sic] assets.

16   Amended Answer and Counterclaims, Dkt. # 123, ¶ 10.14.  As noted above, this 75% provision

17   imposed a duty on the grantor, Mrs. Graham, not on KeyBank.  Defendants may not rely upon it

18   as a factual basis for their breach of contract claim.  This counterclaim shall accordingly be

19   dismissed, with leave to amend, for the same reasons as the breach of fiduciary duty claim which

20   it mirrors.

21           D.  Securities-Related Liability

22           1.  Suitability Rule

23

24

1    Defendants assert two types of securities-related counterclaims against KeyBank.  In the

2  first, they contend that KeyBank "violated its duties regarding the prudence and suitability of

3  investments of the Defendants [sic] assets."   Amended Answer and Counterclaims, Dkt. # 123,

4  ¶ 10.32.  In the other, they allege that "KeyBank was a material participant in the offer, issuance

5  and sale of unregistered securities to the Defendants, in concert with and/or by aiding and

6  abetting Centurion."  *Id.*, ¶ 10.33.   Nowhere do defendants cite a statutory or other legal basis

7  for these counterclaims.

8    The factual basis for these counterclaims is set forth as follows:

9    10.15. Key Bank was aware while managing the assets of the Defendants, that the
     loan proceeds were being used to purchase securities – the funds were invested in
10   unregistered investment contracts created by Thomas R. Hazelrig and Scott Switzer
     through their Centurion Financial Group, LLC entity or otherwise, hereinafter the
11   "Centurion Investments." Key Bank's facilitating Defendants' investments in the
     Centurion Investments, through a loan secured by the managed assets, was the
12   equivalent of Key Bank making direct investments of the managed assets into the
     Centurion Investments.
13
14   10.16. The Centurion Investments were a part of a scheme to defraud the Defendants
     through the sale of unregistered securities, non-disclosure of material facts,
     misrepresentation of material facts, unlawful kickbacks and other improper and/or
15   illegal conduct. In all events, the Centurion Investments were not within a suitable
     category for the assets managed by Key Bank.
16
17   10.17. Key Bank promoted and assisted in the offering of the fraudulent and
     unregistered Centurion Investments to the Defendants and to others, including
     but not limited to a presentation to the O.D. Fisher Investment Company, at which
18   Key Bank participated in the distribution of the Centurion offering circular.

19   . . .

20   10.19. As a consequence of the Centurion Investments, Defendants have had over
     $200,000,000.00 in guarantee liabilities asserted against them. As a promoter and
21   participant in the unlawful sale of securities, Key Bank is liable to Defendants for
     some or all of the liabilities, including guarantee liabilities, asserted against them
22   in connection with the Centurion Investments.

23
     Amended Answer and Counterclaims, Dkt. # 123, ¶¶ 10.15 – 10.17, 10.19.
24

ORDER ON MOTION TO DISMISS COUNTERCLAIMS - 8

1    In moving to dismiss the securities-related counterclaims, plaintiff necessarily had to

2    speculate as to the legal basis for the claims, because defendants did not plead one.  Plaintiff

3    addressed the claims under both Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.

4    § 78j(b), and the "suitability rule"  set forth at RCW 21.20.702.   In response, defendants

5    clarified that their unsuitability claim "is primarily premised not on Section 10(b) . . ., of which

6    unsuitability is only 'analytically' a subset, but on the common law duty of reasonable care to

7    recommend only suitable investments."   Defendants' Response, Dkt. # 142, p. 23 (citations

8    omitted).  The parameters of this common law duty are, according to defendants, the suitability

9    rule set forth in RCW 21.20.702.

10    This statute requires that:

11    (1) In recommending to a customer the purchase, sale, or exchange of a security, a
     broker-dealer, salesperson, investment adviser, or investment adviser representative
12    must have reasonable grounds for believing that the recommendation is suitable for
     the customer upon the basis of the facts, if any, disclosed by the customer as to his
13    or her other security holdings and as to his or her financial situation and needs.

14    (2) Before the execution of a transaction recommended to a noninstitutional customer ...
     a broker-dealer, salesperson, investment adviser, or investment adviser representative
15    shall make reasonable efforts to obtain information concerning:

16        (a) The customer's financial status;

17        (b) The customer's tax status;

18        (c) The customer's investment objectives; and

19        (d) Such other information used or considered to be reasonable by the broker-
         dealer, salesperson, investment adviser, or investment adviser representative
20        in making recommendations to the customer.

21
     RCW 21.20.702.
22
          There is no private right of action under RCW 21.20.702.  *Ives v. Ramsden*, 142
23
     Wash.App. 369, 390, 174 P.3d 1231 (Wash.App. 2008).  Defendants assert that this statute gives
24

rise to a common law duty, but their statement of this duty in opposition to dismissal is for the most part a re-statement of their breach of fiduciary claim:

> Key failed to comply with this suitability rule when it failed to invest Defendants' asserts or recommend that Defendants' [sic] invest those assets in appropriately conservative investments that would preserve the 75% ratio required by Key's loan documents, drafted by Key, for which the assets served as collateral, and when it facilitated the investment of the loan proceeds in unsuitably risky securities, namely the Centurion Investments.

Defendants' Response, Dkt. # 142, p. 24.  The first part of this sentence conflates the collateral for the loans with the investments purchased with the proceeds of the loans.  The breach of fiduciary duty claim with respect to the collateral has been addressed above.

 As to the second part of the sentence, regarding the loan proceeds, the Court notes that Washington courts have indeed found that "the suitability rule may set brokers' common law duty of care toward clients." *Ives v. Ramsden*, 142 Wash. App. at 391.  However, that duty is imposed solely upon a "broker,"  described in the statute as " broker-dealer, salesperson, investment adviser, or investment adviser representative."  RCW 21.20.702(2).   Nowhere in the factual assertions supporting the counterclaims have defendants shown that KeyBank or any named individual representing KeyBank was a "broker" within the meaning of *Ives v. Ramsden* and RCW 21.20.702.  Instead, they have asserted that KeyBank was "aware" that the loan proceeds were being used to purchase securities.  Amended Answer and Counterclaims, Dkt. # 123, ¶ 10.15.  Mere "awareness" is insufficient to impose liability under the suitability rule duty of care.  Defendants also allege in this paragraph that

> Key Bank's facilitating Defendants' investments in the Centurion Investments, through a loan secured by the managed assets, was the equivalent of Key Bank making direct investments of the managed assets into the Centurion Investments.

*Id*.  This "equivalency" assertion is a legal conclusion, not a factual allegation which the Court must take as true. *Clegg v. Cult Awareness Network*, 18 F.3d at 754-55.  Conclusory allegations

1    of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion.  *In re*

2    *VeriFone Securities Litigation*, 11 F. 3d 865, 868 (9th Cir. 1993).  Here, the "equivalent "

3    inference is unwarranted for several reasons, including its failure to recognize the element of

4    choice that defendants had in making their investments.

5         Defendants'  "suitability" claim cannot be brought directly under the statute, and fails

6    even as a common law duty of care claim.  It shall be dismissed, but with leave to amend.  Such

7    amendment must demonstrate that KeyBank or its agents qualified as "brokers" under RCW

8    21.20.702.

9         2.  Securities Fraud

10        Defendants' allegations regarding a scheme to defraud through the sale of unregistered

11   securities, set forth in ¶¶ 10.16, 10.17, and 10.19 of the Amended Answer and Counterclaims

12   (quoted above), although not tied to any statute, arguably raise a claim under Rule 10(b) of the

13   Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and/or Rule 10b-5, promulgated under the

14   authority of Section 10(b).  Section 10(b) makes it unlawful for any person to "use or employ, in

15   connection with the purchase or sale of any security . . . any manipulative or deceptive device or

16   contrivance in contravention of such rules and regulations as the Commission may prescribe."

17   15 U.S.C. §78j(b).  Rule 10b-5, in turn provides that it is unlawful for any person to "engage in

18   any act, practice or course of business which operates or would operate as a fraud or deceit upon

19   any person, in connection with the purchase or sale of any security."  17 C.F.R. § 240.10B-5.

20        A private action under § 10(b) and Rule 10b-5 must allege and prove all of the elements

21   of primary liability as to each defendant.  The elements of a securities fraud claim are: (1) use of

22   any manipulative or deceptive device or contrivance; (2) scienter, i.e., wrongful state of mind;

23   (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6)

24

1    loss causation, i.e., a causal connection between the manipulative or deceptive device or

2    contrivance and the loss. See *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42

3    (2005).

4          A Rule 10b-5 claim does not receive the traditional deference a court affords a complaint

5    in resolving a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6).  The

6    complaint of fraud is subject not only to the heightened pleading requirements of Fed.R.Civ.P.

7    9(b), but also the pleading requirements of the Private Securities Litigation Reform Act

8    ("PSLRA").  *In re Daou Systems, Inc.,* 411 F.3d 1006, 1014 (9th Cir. 2005).  Under Rule 9(b),

9    there is a duty to plead with particularity "the circumstances constituting fraud or mistake,"

10   whereas general allegations will suffice to establish "[m]alice, intent, knowledge, and other

11   condition of mind of a person . . ."  Fed.R.Civ.P. 9(b).   Under the PSLRA, however, a plaintiff

12   must "state with particularity facts giving rise to a **strong inference** that the defendant acted with

13   the required state of mind. 15 U.S.C. § 78u-4(b)(2) (emphasis added).

14         Defendants' counterclaims wholly fail to meet this heightened pleading standard.

15   Defendants have not asserted the statutory basis for their fraud claim, nor alleged facts which

16   would support a finding of the requisite elements of fraud, particularly scienter.  Defendants'

17   bare allegation in ¶ 10.15 that KeyBank "was aware" that defendants were using loan proceeds to

18   purchase unregistered securities is wholly insufficient.   Defendants have not alleged or

19   identified any material misrepresentation with respect to the Centurion investments made by

20   KeyBank, or asserted they in fact relied upon any such misrepresentation.  For these and other

21   omissions, to the extent that defendants' counterclaims plead a cause of action under Section

22   10(b) and Rule 10b-5, it must be dismissed, but with leave to amend.

23         3.  Unregistered Securities

24

1  Defendants' counterclaims make several references to "unregistered" securities, as

2  though that constitutes a *per se* violation of law, without reference to any state or federal law

3  giving rise to a claim thereon.   In their memorandum in opposition to dismissal, they point to

4  "the Securities Act of 1933," with no statutory citation, and one state statute, RCW 21.20.430(3).

5  At the motion hearing, they also argued that "notice pleading" is sufficient to resist dismissal for

6  failure to state a claim.  However, as noted, the counterclaims themselves fail to invoke any

7  specific statute, state or federal, as a basis for the claims.  When a pleading fails to identify any

8  legal basis whatsoever for a cause of action, leaving the opposing party and the Court to guess at

9  which common law or statutory section is invoked, it cannot be deemed "notice pleading."

10  KeyBank has identified the relevant section of the Securities Act of 1933 as Section 12,

11  codified at 15 U.S.C. §77e.  This section creates a private right of action for the sale of

12  unregistered securities, but only against those who solicit, offer or sell the security.  KeyBank

13  thus contends that even if the Court accepts as true defendants' allegation that it "aided and

14  abetted" the sale of the Centurion securities, there is no associated secondary liability.  *Pinter v.*

15  *Dahl*, 486 U.S. 622 (1988).  Defendants contend in their opposition they have overcome this rule

16  by alleging that KeyBank was "affiliated with, associated with, or acted as agents of " Centurion

17  in connection with the investment offering, thereby becoming a "seller" within the meaning of

18  the Securities Act of 1933.  Response, Dkt. # 142, p. 27, *citing Craighead v. E.F. Hutton & Co.,*

19  *Inc.,* 899 F. 2d 485, 493 (9th Cir. 1990).  In making this argument, defendants have quoted the

20  language of the case rather than the language of their counterclaims.  Nowhere in the

21  counterclaims do they allege that KeyBank was "affiliated with" or "associated with" or "acted

22  as agents of " Centurion.  Instead they allege that KeyBank acted by "aiding and abetting,"

23  which as demonstrated above is not an avenue to liability under the federal statute.  Amended

24

ORDER ON MOTION TO DISMISS COUNTERCLAIMS - 13

1   Answer and Counterclaims, ¶ 10.33.  They also allege that KeyBank "promoted and assisted" in

2   the offering, but have not argued that this would convert KeyBank into a "seller" under the law.

3   *Id.*, ¶ 10.17.   Further, their allegations in this area are vague and unspecific as to who did this

4   act, where it occurred, and the date or even the year in which it occurred.  Because of these

5   deficiencies, the allegations in the counterclaims are wholly insufficient to state a claim under

6   the Securities Act of 1933.

7         Similarly, with respect to the state securities law to which defendants point in their

8   opposition to dismissal, they have failed to make the requisite showing as to KeyBank's status in

9   the Centurion transactions.  RCW 21.20.430 imposes liability with respect to violation of certain

10   enumerated statutes only upon "a person who offers or sells a security;"  a "person who directly

11   or indirectly controls a seller;" a "partner, officer, director or person who occupies a similar

12   status or performs a similar function of such seller;" an "employee of such a seller ...who

13   materially aids in the transaction;"  or a "broker-dealer, salesperson, or person exempt under the

14   provisions of RCW 221.20.040 who materially aids in the transaction."   RCW 21.20.430(1), (3).

15   As shown above in consideration of the claim under federal securities law, defendants' factual

16   allegations of "aiding and abetting" or of  "promoting or assisting"  in the Centurion transaction

17   are vague, conclusory, and fail to demonstrate that KeyBank or any agent thereof was a "person

18   who offers a security" or falls within any of the definitions enumerated in RCW 21.20.430(3).

19   As with any claim asserted under federal securities law, defendants' claim regarding sale of

20   unregistered securities in violation of RCW 21.20.430 must be dismissed for failure to state a

21   claim.

22         E.  Release of the Vessel *Bingo*

23

24

1    In their fifth cause of action stated in the counterclaims, defendants ask for release of the

2    vessel *Bingo*.  Amended Complaint and Counterclaims, Dkt. # 123, ¶¶ 10.36, 10.37.  This

3    counterclaim is based on their contention that KeyBank improperly applied the proceeds from

4    the sale of collateral to pay down loans other than the loan secured by the *Bingo*.  They have

5    provided no valid legal or factual basis for this claim.  They have pointed to no provision in the

6    loans documents that required them to prioritize proceeds of the sale of collateral in this way. [2]

7    Nor have they demonstrated any basis for finding that the arrest of the vessel was wrongful.

8    They argue that the security interest in the vessel, as a "documented vessel" is preempted by the

9    Ship Mortgage Act, but this assertion is uncited, unpersuasive, and rebutted by plaintiff's

10    argument in reply that "federal law does not preempt the UCC [Uniform Commercial Code]

11    wholesale; the UCC still applies to ship mortgages where the federal statute is silent on an

12    issue."  KeyBank's Reply, Dkt. # 143, p. 10, *citing* RCW 62A.9A-201(c*); In re McLean*

13    *Industries Inc*., 132 B.R. 271 (S.D.N.Y. 1991).   Defendants did not pursue this line of argument

14    at the hearing and it appears they abandoned it.

15    Defendants failed to explain how KeyBank's allocation of collateral sale proceeds

16    violated federal maritime law or the loan documents.  Their allocation arguments based on

17    KeyBank's fiduciary duties have been subsumed in the general claim of breach of fiduciary

18    duties addressed above.  The allocation claim shall accordingly be dismissed with prejudice.

19    F.  Claim for Declaratory Judgment

20    Defendants' final counterclaim is for a declaratory judgment as to each of the

21    counterclaims they have asserted separately.  They also ask for a declaratory judgment on a new

22    issue, regarding KeyBank's use of "bail out" or TARP funds, but have alleged no facts

23    _____

24    [2] The vessel itself has not been sold.

ORDER ON MOTION TO DISMISS COUNTERCLAIMS - 15

1    whatsoever in support of this request, no basis for their standing to assert such a claim, and no

2    legal basis for this Court's jurisdiction over such a claim.  Amended Answer and Counterclaims,

3    Dkt. # 123, ¶ 10.29(o).

4           To the extent that defendants seek declaratory judgment as to the success of their other

5    causes of action (some of which have already been found lacking in merit), the claim is

6    duplicative and shall be dismissed.  *See*, *Swartz v. KPMG, Inc.*, 476 F. 3d at 765-66.  As to the

7    request for a declaratory judgment that KeyBank misused TARP funds, the claim is in part a re-

8    characterization of their allocation claim, and shall be dismissed on that basis.  Leave to amend

9    will not be granted as it would be futile.  *Nickerson v. Wells Fargo Bank*, 2010 WL 3990743

10   (N.D.Cal.,2010)  (finding that amending a complaint to include a TARP claim would be futile).

11   Numerous courts in this circuit have determined that there is no private right of action under

12   TARP.  *Gardner v. American Home Mortg. Servicing, Inc*., 691 F.Supp.2d 1192, 1203-04

13   (E.D.Cal.,2010); *citing .Pantoja v. Countrywide Home Loans, Inc*., 640 F.Supp.2d 1177, 1185

14   (N.D.Cal.2009) ("there is no express private right of action against TARP fund recipients."); *see*

15   *also Robinson v. Wells Fargo Bank, N.A.*, 2010 WL 2534192, *6 (D.Ariz. Jun 18, 2010) ("The

16   Court finds that TARP does not create, either explicitly or implicitly, a private right of action

17   against TARP fund recipients.").

18                                              CONCLUSION

19          Plaintiff's Rule 12(b)(6) motion to dismiss defendants' counterclaims (Dkt. # 130) is

20   GRANTED, and all counterclaims asserted in the Amended Answer and Counterclaims (Dkt. #

21   123) are DISMISSED.  As noted above, such dismissal is with leave to amend the claims of

22   breach of fiduciary duty, breach of contract, and securities law violations only.  The claims for a

23

24

1    declaratory judgment, release of the vessel *Bingo*, and violation of the Washington CPA are

2    dismissed with prejudice.

3

4           Dated this 22nd day of April 2011.

5

6

7           RICARDO S. MARTINEZ
            UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON MOTION TO DISMISS COUNTERCLAIMS - 17